**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* C.S.-1

**No. 25-207** (Braxton County CC-04-2024-JA-37)

## MEMORANDUM DECISION

Petitioner Father C.S.-2[1] appeals the Circuit Court of Braxton County's February 20, 2025, order terminating his parental rights, arguing that the circuit court erred in terminating his rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a second amended petition[3] in October 2024, shortly after C.S.-1's birth, alleging that the petitioner had an extensive criminal history, including an incident of domestic battery against the child's mother in 2023, as well as other violent felonies and drug offenses. The DHS further alleged that the petitioner's parental rights to other children had been involuntarily terminated due to domestic violence and substance abuse and that the petitioner had failed to correct these circumstances. The following month, the DHS filed a third amended petition alleging that the petitioner tested positive for methamphetamine.

The court held an adjudicatory hearing in December 2024. The petitioner stipulated to his lengthy criminal history—including the domestic violence incident against the mother—and to his substance abuse. He further acknowledged the prior termination of his parental rights due to domestic violence and substance abuse and that he had failed to correct these issues. On this basis, the circuit court adjudicated the petitioner as an abusive and/or neglectful parent and C.S.-1 as an abused and/or neglected child.

The guardian filed a report in January 2025, noting that the DHS had provided the petitioner with anger management services, domestic violence counseling, and drug screening in the prior

---

[1] The petitioner appears by counsel Timothy V. Gentilozzi. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Counsel Julia R. Callaghan appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the petitioner and the child share the same initials, we use numbers to differentiate them.

[3] The initial and first amended petitions concerned adult respondents and a child not at issue on appeal.

abuse and neglect case before the petitioner's parental rights were terminated in August 2021. Because the petitioner was unable to correct the conditions of abuse and neglect in the prior proceeding, despite being offered services, the guardian argued that there were no additional services the DHS could provide and recommended termination.

At a dispositional hearing in February 2025, a Child Protective Services ("CPS") worker testified that the petitioner had tested positive for methamphetamine and fentanyl earlier that day. She acknowledged the petitioner's participation in parenting and adult life skills classes and that he had completed an online domestic violence course but noted that these services did not address the basis for several of his past convictions or his drug problem. She further testified that, given the petitioner's failure to take advantage of services in the prior case and his continued failure to correct the circumstances of neglect, there were no additional services the DHS could offer him. The CPS worker believed that the petitioner was "a very violent person" and that "it would not be in [the child's] best interest to try and create a bond" with him. The DHS therefore recommended termination. The petitioner then testified and admitted to having "a lot of violent charges" because "throughout life [he would] let [his] emotions get the best of [him]." The petitioner initially stated that he "[did not] think [he] needed" long-term substance abuse treatment but later rescinded that remark and admitted to having a problem with controlled substances. The petitioner acknowledged his positive drug screen prior to the hearing but stated that he "[knew] for a fact [that] [he] didn't use." He admitted that he "might have been around places [he] shouldn't have been" and that the people he relied on for transportation were drug users, so he had been "around secondhand smoke." He later stated: "I'll admit that I did the drugs, even though I knowingly didn't." Finally, the petitioner testified that he was willing to do anything the court asked in order to be granted an improvement period.

Based on this evidence, the court found that the petitioner had a violent criminal history and that his parental rights to other children were previously terminated due to domestic violence and his substance abuse issues. Noting that the petitioner continued to struggle with substance abuse in the current case, the court concluded that the petitioner had failed to correct the conditions which led to the prior termination of his parental rights. Moreover, the court did not find credible the petitioner's explanation for his positive drug screen at disposition. The court therefore concluded that the petitioner "failed to demonstrate that he would comply with an improvement period," if one were granted, and that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the foreseeable future. Accordingly, having found that there was "no less restrictive alternative available to protect [the child's] health, safety, and welfare," the court terminated the petitioner's parental rights to C.S.-1.[4] The petitioner now appeals this dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner asserts that the circuit court erred in terminating his parental rights instead of imposing a less restrictive alternative, arguing that termination was not in the child's best interest and that the conditions of

---

[4] The permanency plan for the child is reunification with the mother.

2

abuse and neglect could have been substantially corrected in the near future.[5] However, we have held that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)); *see also* W. Va. Code § 49-4-604(c)(6) (permitting the termination of parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child"). There is no such likelihood when the parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help," including circumstances where the parent has "habitually abused or [is] addicted to . . . controlled substances or drugs." W. Va. Code § 49-4-604(d).

Ample evidence supports the circuit court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect. This was the petitioner's second abuse and neglect case in recent years. Both cases involved allegations of domestic violence and substance abuse, indicating that the petitioner failed to gain any meaningful benefit from past DHS services. Moreover, the petitioner tested positive for methamphetamine and fentanyl on the day of the dispositional hearing. The petitioner's testimony regarding his substance abuse was equivocal at best, as he denied "knowingly" using drugs and attributed the positive result to his proximity to other drug users and to "secondhand smoke." As we have stated, "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse . . . , results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Given the petitioner's testimony, it was reasonable for the circuit court to conclude that his issues with substance abuse were not treatable. Therefore, the circuit court did not err in concluding that there was no reasonable likelihood that the petitioner could correct this condition of neglect in the near future.

The court additionally found that termination was necessary for the child's safety and welfare. This finding is also supported by the record, for the reasons outlined above. Circuit courts are permitted to terminate a parent's rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6). Further, we have explained that there is no need for courts to "exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously

---

[5] The petitioner also asserts that the circuit court wrongfully denied him an improvement period. While it appears that the petitioner testified at disposition to his willingness to participate in a post-adjudicatory improvement period, the petitioner does not cite to or include a written motion for an improvement period in the record on appeal, nor does it appear from the record that he filed such a motion. *See* W. Va. R. App. P. 10(c)(7) (requiring the petitioner's brief to include "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal"). Further, as we have explained, "[a] circuit court may not grant an . . . improvement period . . . unless the respondent to the abuse and neglect petition files a *written* motion requesting the improvement period." Syl. Pt. 4, in part, *State ex rel. P.G.-1 v. Wilson*, 247 W. Va. 235, 878 S.E.2d 730 (2021) (emphasis added). As such, the petitioner is not entitled to relief.

threatened, and this is particularly applicable to children under the age of three years" as infants require "consistent close interaction with fully committed adults." *See In re R.J.M.,* 164 W. Va. at 496, 266 S.E.2d at 114, Syl. Pt. 1, in part. C.S.-1 was less than six months old at disposition. Accordingly, we conclude that the circuit court did not err in terminating the petitioner's parental rights.

For the foregoing reasons, the circuit court's February 20, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4